248 So.2d 511 (1971)
UTICA MUTUAL INSURANCE COMPANY, et al., Appellants,
v.
Sarah G. CLONTS, Appellee.
No. 70-431.
District Court of Appeal of Florida, Second District.
May 19, 1971.
John I. Van Voris of Shackleford, Farrior, Stallings & Evans, Tampa, for appellants.
David A. Maney and Richard Mulholland, Tampa, for appellee.
McNULTY, Judge.
In this automobile negligence action, appellee sued appellants Solomon and their liability carrier Utica Mutual Insurance Company, hereinafter Utica Mutual. At pretrial conference the sole triable issues were determined to be "negligence" and "damages." At that time, and prior to the trial which resulted in verdict and judgment against all defendants-appellants, Utica Mutual moved for severance so that "* * * Plaintiff's causes of action shall be tried under circumstances which exclude any reference to insurance, insurance coverage or the fact that Utica Mutual Insurance Company has been joined in the suit as a co-defendant." This motion for severance was denied, the trial resulted in the verdict and judgment aforesaid and this appeal ensued which, in the one meritorious point, assails the trial court's denial of a severance as aforesaid. We reverse.
Obviously, the troublesome question before us brings us within the ambit of the recent decisions of our supreme court in Shingleton v. Bussey[1] and, later, in Beta Eta House Corporation v. Gregory.[2]Shingleton, of course, permitted a direct tort action against the liability insurance carrier of the defendant when theretofore such action was impermissible in this state. The essential purpose therefor, as noted in Beta Eta, supra, was:[3]
"* * * to require the parties to `lay their cards on the table' in discovery proceedings, settlement negotiations, and pre-trial hearings. * * *"
But as Shingleton began to have its impact on tort litigation the question naturally arose as to when, if at all, the trial itself could be insulated from the injection of insurance matters. True it is that that case, in obiter, impliedly acknowledged the admissibility of the liability insurance contract at trial, and thus the liability carriers' interest in the case.[4] But it must *512 be remembered that the case was still in the pleading stage, and the direct question was not passed upon.[5] The matter was touched upon later by that court in Beta Eta, however, as the court observed:[6]
"* * * The existence or amount of insurance coverage has no bearing on the issues of liability and damages, and such evidence should not be considered by the jury."
Notwithstanding this pronouncement, the express holding of Beta Eta on the point is that:[7]
"The trial court may on motion of either party order separate trials pursuant to Rule 1.270(b), Florida Rules of Civil Procedure [30 F.S.A.], in those cases where the liability insurance carrier is joined as a defendant in a tort action against its insured."
Thereafter, we noted in Durrett v. Davidson that:[8]
"It is apparent from a reading of the above-quoted portion of the supreme court's opinion that the court intended to restore to the trial court whatever measure of discretion the First District's decision purported to remove."
Accepting then, as we must, the mandate of Beta Eta, i.e., that the granting vel non of a severance in these cases pursuant to Rule 1.270(b), supra, is a matter of discretion[9] (and perceiving a mere distinction without a difference in the premises between utilization of that rule instead of a motion seeking like relief by "motion practice" under Rule 1.100(b), R.C.P.),[10] the precise question devolves as to when such discretion is fatally abused.
At the outset, we observe that the discretion involved is not unlike the ordinary judicial discretion spoken of in other cases; that is to say, it is not a naked right to choose between alternatives. There must be a sound and logically valid reason for the choice made. If a trial court's exercise of discretion is upheld whichever choice is made merely because it is not shown to be wrong, and there is no valid reason to support the choice made, then the choice made may just as well have been decided by the toss of a coin. In such case there would be no certainty in the law and no guidance to bench or bar. Such an appellate decision would be a "cop out", and in situations such as that before us trial courts could continue to go both ways with impunity thus encouraging "judge hunting", and resulting in disparate rulings in the premises depending upon where suit is filed and which judge is sitting. We reacknowledge, therefore, one of the paramount duties incumbent upon appellate courts, i.e., to set guidelines for the relatively certain and uniform administration of justice.
Now, considering the narrow and specific problem facing us here, it is obvious that the plaintiff's bar considers it a distinct advantage to get insurance matters before the jury, witness the recent vigorous efforts made before this court here and in other cases to sustain a denial or to reverse a granting of a motion to sever insurance matters. On the other hand, defense counsel obviously fear that the injection of such matters at trial will be disastrously prejudicial, witness their equally vigorous attempts to reverse a denial or to uphold a granting of such a motion. But plaintiffs can't say they are prejudiced by severance merely because insurance matters are excluded, and, in the face of Shingleton, defendants can't say they are prejudiced merely by their inclusion. Accordingly, the arguments in these cases must address themselves to the likelihood *513 of prejudice. Yet before trial how can this be shown? Correlatively, if prejudice cannot be shown to be likely, how can the exercise of discretion be said to have been persuaded thereby?
Now, we can agree that the injection of liability insurance matters into a tort action is no longer ipso facto prejudicial as a matter of law.[11] But does that mean to say, as a matter of law, it is always nonprejudicial? As a matter of pragmatic truth, it is almost impossible to determine whether it is prejudicial or not except in those cases in which, after trial, it is clear from the amount of damages awarded that the jury verdict is an "insurance verdict." As to the issue of liability, only the Divine can measure the influence the injection of liability coverage may have on a jury, particularly on close questions of negligence and contributory negligence. We think it can be agreed, nonetheless, that it may be prejudicial, albeit concededly less likely now than of yore. The trouble is we rarely know which cases have been contaminated.[12]
Accordingly, the problems inherent in the matter before us ought not be resolved by amorphous speculation as to whether the injection of insurance in a tort action is or is not likely to prejudicially influence the jury. Rather, the dispositive question should be, and in the final analysis is, whether any aspect of insurance is relevant to the triable issues remaining in the case.
As we noted, Shingleton did impliedly acknowledge the potential admissibility of insurance matters at trial. But that case is silent on whether the injection of such matters before the jury is proper or permissible notwithstanding that the relevance thereof may theretofore have become obviated. On the other hand the supreme court in Beta Eta, by its limited modification thereof in other respects, approved the First District's pronouncement that Shingleton "merely created a procedural innovation" and did not "have the effect of changing the substantive law of this state * * *"; and it has always been the law that irrelevancies are inadmissible at trial. While evidential, this rule is substantive in nature since it pertains to matters or things within the disciplines governing judicial proof, not the manner, form or scope of judicial proceedings.
Apart then from those cases wherein triable issues exist between the insured and the carrier (in which cases there seems to be no question as to the severability of such issues),[13] we hold that after all the "cards" have been laid "on the table" and the ultimate purposes of Shingleton have been satisfied, and after full and complete pretrial proceedings there remains no triable issues in the case save the issues of liability[14] and compensatory damages[15] as *514 between the plaintiff and the insured, it is a reversible abuse of discretion to deny a motion (whether called one for severance pursuant to Rule 1.270(b), supra, or one filed pursuant to Rule 1.100(b), supra) which seeks a trial of such issues free from any reference to insurance, insurance coverage or joinder in the suit of the insurer as a co-defendant.[16] The injection of such matters before the jury, without any redeeming relevance, leaves remaining as the sole residuum only the risk of irreparable prejudice. This is the fatal vice.[17]
As noted, the sole triable issues in this case were negligence and compensatory damages. The litigation had progressed through the pretrial setting and it is patent that all the cards were on the table. We cannot find, nor is it suggested, that any reference to insurance matters was even remotely relevant to any such remaining triable issues; thus the risk of prejudice was the only result possible from the injection of such matters at trial. A timely motion was made for insulation of the trial from such matters and, in this respect, this case is materially distinguishable from Durrett.[18] In that case no objection was made to the injection of insurance matters at or prior to trial; the objection was first made on motion for new trial and after an adverse verdict. That case was decided on principles entirely different from those applicable here.
In view of the foregoing therefore the judgment appealed from should be, and it is, reversed, and a new trial awarded.
Now patently, we think, the question here decided is one of great public interest. Additionally, our decision is clearly in conflict with that handed down by our sister court in the Fourth District[19] and with a recent decision of this court.[20]
Accordingly, we deem it expedient to certify the question to the Supreme Court for clarification. The question posed is whether it is a reversible abuse of discretion to deny a motion, in whatever form, seeking to insulate a jury trial in a tort action from any mention or reference to insurance, insurance coverage or joinder in the suit of the insurer as a codefendant when such insurance matters are not relevant to the remaining triable issues in the case. Certification of such question is hereby ordered.
PIERCE, C.J., concurs.
MANN, J., dissents for reasons expressed in Kratz v. Newsom, ___ So.2d ___, Case No. 70-652, opinion filed ___________.
NOTES
[1] 223 So.2d 713 (Fla. 1969).
[2] 237 So.2d 163 (Fla. 1970)
[3] Id. at 165.
[4] Note 1, supra, at p. 718.
[5] See, also, Montano v. Wigfield, (Fla. App. 1970) 239 So.2d 609.
[6] Note 2, supra, at p. 165.
[7] Id.
[8] (Fla.App. 1970), 239 So.2d 46, 48.
[9] Cf. Stecher, et al v. Pomeroy (Fla.App. 1971), 244 So.2d 488.
[10] See Authors' Comment to Rule 1.270, R.C.P., 30 F.S.A. 371.
[11] See, also, Durrett v. Davidson, note 8, supra, at p. 48.
[12] See, also, Judge Wigginton's comments in Beta Eta (Fla.App. 1970), 230 So.2d 495, 500.
[13] See both Shingleton and Beta Eta, notes 1 and 2, supra.
[14] Within the scope of the liability issue, and as an example of the discretion involved, it may appear from pretrial conference that a prospective defense witness is an agent of the liability carrier, e.g. an investigator or adjuster, who will be relied upon by the defense to impeach the plaintiff's case. In such a case his interest in the outcome of the trial is certainly relevant to his credibility and thus relevant to a "triable issue." The insurance contract indicating the extent of such interest would then, of course, be ordinarily admissible under our holding here. But a matter such as this is still addressed to the sound discretion of the court since the witness referred to may be clearly cumulative as to the matters of which he is a witness, and the likelihood of prejudice otherwise may outweigh the naked relevance of his testimony. In such case, the granting of a severance would still be a proper exercise of discretion if the court properly limits or prohibits the use of such witness.
[15] If punitive damages are sought the liability coverage of the defendant may well be relevant on the issue of "punishment" to the defendant over and above his ability to respond in compensatory damages, since such ability is indemnified to the extent of such coverage. This, too, is a discretionary matter depending upon the status and/or reputed wealth of the defendant.
[16] We do not decide the extent of, nor do we limit, the trial judge's ordinary discretion on voir dire if, upon a proper predicate and after a properly discreet sequence of questions, it appears the spectre of insurance may influence a prospective juror who, although insurance was not theretofore mentioned, may assume or surmise the existence thereof.
[17] Contra, Stecher v. Pomeroy, note 9, supra.
[18] Note 8, supra.
[19] Stecher v. Pomeroy, note 9, supra.
[20] Hartford Accident and Indemnity Co. v. Myers, Fla.App., 247 So.2d 83, Opinion filed April 7, 1971.